IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,                             Criminal No. 17-0224
                                                          ELECTRONICALLY FILED

   v.

MICHAEL DILLON BURROWS,

       Defendant.

**Findings of Fact and Conclusions of Law on Motion to Suppress**

**I.     Introduction**

On August 23, 2017 an indictment was filed against Defendant, and on November 30, 2017, a superseding indictment was filed, charging possession of a firearm by a convicted felon, and possession with intent to distribute heroin, in violation of 18 U.S.C. Section 922(g)(1), and 21 U.S.C. Sections 841(a)(1) and (b)(1)(C), respectively. On January 5, 2018, Defendant filed the instant Motion to Suppress. On January 23, 2018, this Court held a suppression hearing. Thereafter, the parties submitted their proposed Findings of Fact and Conclusions of Law (doc. 67 and doc. 69). The trial of this matter is scheduled to occur on April 23, 2018, before the Honorable Reggie Walton. For the reasons that follow, Defendant's Motion to Suppress (doc. 57) will be DENIED.[1]

---

[1] Also pending before this Court is Defendant's Motion to Strike the Government's attempt to include portions of Defendant's testimony in the transcript of the detention hearing (doc. 68), which were not presented as evidence during the Suppression Hearing. The Court will GRANT Defendant's Motion to Strike, and the Court will not rely on said transcript in these Findings of Fact and Conclusions of Law.

## II. Findings of Fact

1. The first witness at the suppression hearing, Detective Michael Bailey, is a detective with the Adams Township Police Department, a position he has held for approximately four to five years. The Court finds his testimony to be credible.

2. Detective Bailey responded to the drug overdose death of Elizabeth Arblaster on September 3, 2016, and at the scene of the overdose, stamp bags marked "the King," with the image of a gorilla face in black and white, were found.

3. After locating the decedent's phone, and identifying what appeared to be drug related text messages between Eugene Smith and decedent, Detective Bailey spoke to the decedent's boyfriend who confirmed that the drugs were obtained from an older man named "Smitty" at Old Plank Estates.

4. Detective Bailey contacted other local police departments and Butler Township Police informed him that Eugene Smith was a witness to another overdose death that occurred at 152 Old Plank Road, and that there had been a rash of recent overdose deaths in Butler City involving stamp bags marked "the King," which had been obtained from one of the first two buildings in Old Plank Estates.

5. Detective Bailey swore out an affidavit setting forth the above facts and others, and obtained a search warrant for Eugene Smith's apartment, located at 152 Old Plank Road, Apartment A, Butler, Pennsylvania.

6. It is important to note that the warrant for 152 Old Plank Road states that the following items were subject to the search warrant: "[D]rugs, drug paraphernalia, owe sheets, cell phones, firearms, stolen merchandise or other evidence of distribution of a controlled substance." Tr. at 13-14; Exhibit 2.

7. Detective Bailey assembled a team of officers to execute the search warrant, including Sergeant Edward Lenz, of Adams Township Police Department. Tr. at 16, 91.

8. Sergeant Lenz, who was the second officer to testify, has been a sergeant for two years, and prior to that, was a patrolman for Adams Township Police Department for 7 years.

9. On September 8, 2016, police officers including Detective Bailey and Sergeant Lenz, who also testified credibly, executed the subject search warrant on 152 Old Plank Road. Tr. at 14, 91.

10. Upon execution of the warrant, the police saw five people in the living room/entrance area of the apartment and, one person, Defendant Burrows, in the back bedroom/bathroom area of the apartment. Tr. at 15, 92.

11. Approximately four to five officers were present at execution of the search warrant and, because there were 6 persons present at the residence, Detective Bailey called other officers for backup and handcuffed the 6 individuals. Tr. at 16, 70.

12. Additional backup officers, were called to the scene of the search warrant, including Officer Douglas Mazzanti, of the Adams Township Police Department, who also testified at the hearing. Id.

12. Officer Mazzanti has been a police officer with Adams Township for 10 years, and prior thereto, he was employed by the Butler City Police for approximately 6 ½ years. Tr. at 69-70. The Court credits his testimony as credible and consistent with the testimony of Detective Bailey and Sergeant Lenz.

13. Police secured the 6 persons whom they had handcuffed during the search in the apartment, and moved them to a vacant space upstairs, and then began the search of the apartment.

14. The Police took photographs of the scene which are depicted in Exhibits 3a-3d, and photographs of the items found in the back bedroom are depicted in the photographs marked as Exhibits 3e-3p. Tr. 19-20; Ex. 3a-3p.

15. In the living room area, where the "users" of the narcotics were found, there were items of drug paraphernalia observed in plain view. Tr. at 17.

16. In the back bedroom of the apartment, approximately 20 stamp bags of suspected heroin were found on the bed, along with multiple baggies of suspected crack cocaine, multiple loose pieces of suspected crack cocaine, a spoon, 8 syringes, a digital scale, a pill grinder, and two cellular phones. Tr. at 22-27, and 93-94.

17. Police also found a pair of jeans on the floor next to the bed in the back bedroom. These jeans contained 3 stacks of cash, totaling $1,607.00, in one pocket and Defendant's driver's license in another. Tr. 24-26 and 94-954; Ex. 3j-1.

18. Police believed that these jeans belonged to Defendant Burrows because his license was in the pocket, but also because the pants size indicated that they were Defendant's. Tr. at 25.

19. Defendant Burrows was in his boxers when the warrant was executed and Defendant later requested his pants, after the search of the jeans was conducted. When Detective Bailey gave him the jeans, he confirmed that they were his, and they fit. Tr. at 25, 66.

20. Police searched Defendant's jeans because the warrant permitted them to search for items that could be located in pants pockets. Tr. at 66 and 97.

21. Police seized the money found in Defendant's jeans because large amounts of cash, particularly when found in the vicinity of drugs, are traditionally related to drug dealing since drug dealing is a cash-based business. Tr. at 27-28 and 95-96.

22. Police found a keychain on the bed in the back bedroom of the apartment, which had on it both a key for a Mercedes vehicle, and a photograph of the Defendant with a female. Tr. at 22, 23; Ex. 3g.

23. The keychain was found on the bed, approximately two to three feet from the suspected heroin, and close to the crack cocaine, and the police seized the keychain. Tr. at 23, 26, 94.

24. Police further discovered a bag of prescription pill bottles in the name of Defendant in the back bedroom. Tr. at 23; Ex. 3k.

25. While the search of 152 Old Plank Road was being conducted, Detective Bailey went to the area where the multiple detained individuals were being held, and conducted interviews of these persons. Tr. at 28-29.

26. As a result of the interviews, Detective Bailey obtained two written statements from two individuals. Tr. at 29 and 65. Ex. 4a-b.

27. Both written statements revealed that the Defendant was supplying these individuals with heroin from the back bedroom of the apartment. Tr. at 29; Ex 4a-b.

28. Detective Bailey believed, based upon other interviews with persons at the apartment, that Defendant had been staying at the apartment for a short period of time, about a week or less.

29. Upon completion of the search of the apartment, Officer Mazzanti informed the other officers that based upon his prior work as a police officer in Butler City, he knew Defendant to be a drug dealer, and as a "well-known fixture" in the City of Butler, he was known to drive a silver Mercedes SUV. Tr. at 32, 73, 98-99, 122-123.

30. In fact, Defendant's photograph was on the wall year-round in the Butler Police Department, including his nicknames and the vehicle he drove, and he was known by the Butler Police as a high-level drug dealer in the City of Butler. Tr. at 73.

31. Officer Mazzanti had previously participated in an unrelated search of Defendant's vehicle, and Defendant had previously been pulled over driving the vehicle by Butler City Police in January of 2016. Tr. at 75-76.

### **Facts Related to Vehicle Search and Seizure**

32. Officer Mazzanti testified credibly that he went outside to look for Defendant's vehicle, after informing the officers that he could identify the car Defendant drives, and located it outside in the parking lot within approximately 200 feet of the entrance at 152 Old Plank Road. Tr. at 33, 77.

33. Officer Mazzanti testified credibly that he does not believe he used the remote features on the key to locate the vehicle; instead, he located the SUV by looking for it, and because the lot was relatively empty, and small, he had no difficulty finding it. Tr. at 34-35, 77, 99.

34. The location of the SUV in the parking located is depicted in Exhibits 6a-c. Tr. at 34.

35. Officers then ran the license plate number and determined that it was registered to a Michael Burrows, and they would later find out that it was actually Defendant's father (Michael Burrows, Sr.), but at the time it was seized, they believed it was registered to Defendant (because Defendant had the SUV key and a photograph of Defendant and a woman was on the key chain). Tr. at 35-36, 99-100.

36. Detective Bailey contacted the on-call Assistant District Attorney, Ben Simon, to consult regarding the seizure of the vehicle, and ADA Simon came to the scene. Tr. at 36, 61, 67, 87-88 100, 116.

37. Detective Bailey testified credibly that he believed there was probable cause to seize the SUV based upon various pieces of evidence at the initial search that Defendant was the drug dealer at the apartment, and he felt that contraband may be housed in the vehicle. Tr. at 36-39.

38. Nonetheless, Detective Bailey advised ADA Simon about the situation, and ADA Simon confirmed his belief that there was probable cause to seize the vehicle, and officers followed his directives in this regard. Tr. at 36.

39. Because Detective Bailey was concerned that the car could not be secured in the lot while the police obtained a search warrant, the police ordered a tow truck to assist in seizing the vehicle. Tr. at 36-38.

40. The tow truck driver informed Sergeant Lenz that, because the vehicle was all-wheel drive, it must be put into neutral in order to avoid damaging the transmission of the car while placing it on the tow truck. Tr. at 80, 101.

41. Sergeant Lenz then accessed the vehicle with the key that was found on the bed in the apartment, and put the vehicle in neutral. He testified credibly that he did not attempt to search any portion of the vehicle at that time. Tr. at 80, 102.

42. The SUV was then transported by the tow truck driver to the Adams Township Police Station. Tr. at 102.

43. When the vehicle arrived at the Adams Township Police Station, again, so that they did not damage the vehicle, Sergeant Lenz drove the vehicle for approximately one minute or less, and again did not make any attempt to search the vehicle. Tr. at. 102-103.

44. Sergeant Lenz placed evidence tape on the vehicle, as depicted in Exhibits 8a-k, and the vehicle remained secured inside the impound garage which is connected to the police department, from September 8, 2016 to September 13, 2016, the date when the police obtained a search warrant for the vehicle. Tr. at 103-106. Ex. 8a-k.

45. Because Detective Bailey had a preplanned vacation, he did not participate in the drafting or execution of the vehicle search warrant; instead, Sergeant Lenz drafted the search warrant. Tr. at 39, 105. Ex. 10.

46. In the five-day delay between the seizure of the vehicle, and the issuance of the warrant, no one objected to the seizure and search. Tr. at 105.

47. Defendant's father testified at the suppression hearing that he went to the police department in Butler a day or two after the Defendant was arrested to inquire about the vehicle, but he was unable to determine its location. Tr. at 135-136.

48. Defendant's father testified that Adams Township Police contacted him and told him that the vehicle was being forfeited. Tr. at 136.

49. Sergeant Lenz obtained a search warrant for the SUV on September 13, 2016, and the vast majority of the information contained in the search warrant affidavit was known to officers when the vehicle was seized. Tr. at 107.

50. Although the police officers had more information than was contained in the search warrant affidavit, including the witness statements, Sergeant Lenz decided not to include

the witness statements in his search warrant affidavit to protect any persons who might cooperate in the investigation. Tr. at 109.

51. In any event, the search was not completed pursuant to any police department's inventory search policy; instead, it was based upon the probable cause belief that there was contraband in the vehicle. Tr. at 40, 67, 87-88, 100-101.[2]

52. Sergeant Lenz conducted the search of the SUV and found cash in the console, and a loaded revolver in the first aid compartment in the back hatch of the vehicle. Tr. at 109, 111. These items are depicted in Exhibits 11b, 12a-c, and 13.

53. The warrant listed items to be searched for, including drugs, drug paraphernalia, and firearms, as drug dealers often use firearms to protect themselves. Tr. at 111; Ex. 10.

54. The compartment where the revolver was found could have also held money, or drugs. Tr. at 112; Ex. 10.

55. Michael L. Burrows, Defendant's father, also testified at the hearing that he owned the vehicle., and that it was registered in his name. Tr. at 134.

56. Although Defendant primarily used the vehicle, his father testified that he, on occasion, drove the car as well, and that they were jointly responsible for the upkeep of the car. Tr. at 134-135.

---

[2] Throughout these proceedings, Defendant has made much of the contention that this search was not conducted pursuant to an inventory search policy, and that it is therefore illegal. This Court disagrees and finds that the vehicle was not seized and towed pursuant to Adams Township policies regarding arrests while on the road. Instead, because the officers believed, after consultation with an Assistant District Attorney, that they had probable cause to seize the SUV, and the fact that they were cautious in proceeding and did not attempt to conduct an inventory search, will not be now held against them, demonstrates lack of any deliberate wrongdoing.

**III.    Conclusions of Law**

The instant Motion to Suppress seeks suppression of (1) $1,607.00 in cash seized from Defendant's pant pocket; (2) a car key belonging to Defendant which was found on the bed in the back bedroom of the apartment, near controlled substances; and (3) the firearm found inside the vehicle used by Defendant.  All three items were searched for and seized properly and lawfully, and therefore, Defendant's Motion to Suppress will be DENIED in its entirety.

**A.    The $1,607.00 in cash in Defendant's pants was properly searched for and seized pursuant to a valid search warrant.**

Defendant does not challenge the search warrant with respect to the $1,607.00 cash; instead, he asserts that this money should be suppressed, because Defendant, as an overnight guest not specifically named in the search warrant, has an expectation of privacy in his pants found within the residence.  The Court finds that the search warrant was valid, and authorized a search for "drugs, drug paraphernalia, owe sheets, cell phones, firearms, stolen merchandise, or *other evidence of distribution of a controlled substance.*"

Officers were entitled to search anywhere that the evidence called for could be found, including Defendant's pants pockets.  A large amounts of cash has been found to constitute circumstantial evidence of the distribution of drugs.  See *United States v. Wright*, 739 F.3d 1160, 1169-70 (8th Cir. 2014) *citing United States v. Boyd*, 180 F.3d 967, 980 (8th Cir. 2001).  This evidence was properly searched for and seized pursuant to a valid search warrant.  Additionally, once the items of contraband were found on the bed and in the very room where Defendant was staying, that gave the police further justification to search his pants.

The Court does not find this case analogous to *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979), which dealt with the Fourth Amendment rights of a person who happened to be present where a warrant was being executed.  In *Ybarra*, unlike here, the police entered a public bar

10

where they had reason to believe that the bartender was selling heroin. Unlike this case, the police did not recognize Ybarra and had no reason to believe that he had committed, was committing, or was about to commit any criminal offense. The Court in that case held that while law enforcement had "a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed," it did not mean he could be searched because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id*. at. 92. Assuming for sake of argument that Defendant was merely a person present, certainly, once the police saw the controlled substances on the bed next to Defendant's photograph and keys, in plain view, they were justified in continuing the search into his pants pockets.

**B.    The car key was seized pursuant to a valid search warrant.**

Defendant claims that the key was not seized pursuant to the search warrant executed at 152 Old Plank Road, because the key was not specifically listed as an item to be searched for and seized on the warrant itself, and again, that Defendant was merely a person present when the premises warrant was executed and had an expectation of privacy in the SUV key. Again, like the cash, the key seized with Defendant's photo on the key chain constitutes "other evidence of distribution of a controlled substance," as it was located in close proximity to the controlled substances for which Defendant is charged in the case, and Defendant was known to be a drug dealer who drove a silver Mercedes SUV. Here, the nexus between the key, which links Defendant to the bedroom, and bed on which the controlled substances were found, and the alleged criminal activity, is undeniable.

### C. The vehicle was lawfully seized.

Defendant claims that the firearm that was recovered in the back of the SUV is subject to suppression, because the vehicle was unlawfully seized by the police without a warrant. Setting aside the issue of whether Defendant even had a reasonable expectation of privacy in the vehicle in question, the automobile exception negates Defendant's argument thereon.

If the police have probable cause to believe that a vehicle contains contraband or evidence of criminal activity, they may search the vehicle without a warrant. *See United States v. Ross*, 456 U.S. 798, 809 (1982). The Supreme Court has stated that this concept is applicable to both warrantless searches and warrantless seizures. *Florida v. White*, 526 U.S. 559, 564-65 (1999).

Where there is a "fair probability that contraband or evidence of a crime will be found in a particular place," probable cause exists. *United States v. Bond*, 581 F.3d 128, 139 (3d Cir. 2009). Probable cause has been described as a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people,] not legal technicians, act." *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) *citing Ornelas v. United States*, 517 U.S. 690, 695 (1996).

Because vehicles are mobile, and one's expectation of privacy is less than within someone's home, searches and seizures of vehicles are more permissive than of one's home. *Chambers v. Maroney*, 399 U.S. 42, 57 (1970). Where, as here, the vehicle in question is seized from an apartment building's parking lot, accessible by the public, the vehicle owner has a further diminished expectation of privacy in the vehicle. *See White*, 526 U.S. at 565-66. This Court is mindful that when determining whether probable cause exists, there is a critical

distinction between the burden of proof for a finding of guilt, and the level of proof for a finding of probable cause.

Simply put, at the time of the seizure of the vehicle, the officers here had more than ample information to support a finding of probable cause, which necessitated the seizure of the vehicle under the automobile exception. Namely, all of the facts related to the execution of the warrant at 152 Old Plank Road, including that approximately 20 stamp bags of suspected heroin marked "The King" (matching the bags they found at the scene of the overdose death of Ms. Arblaster), multiple bags of suspected crack cocaine, and several cell phones were found on the same bed as the car keys (bearing a photograph of Defendant); $1,607 was found in Defendant's pants pockets; prescriptions of Defendant's were also found in the bedroom; and, interviews with the individuals present at the apartment revealed that Defendant recently had set up at this apartment to sell drugs from the back bedroom. Additionally, Officer Mazzanti had personal knowledge of Defendant and his vehicle and saw the vehicle in the parking lot which was fully accessible to the public, and the SUV's license plate search revealed that it was registered to a "Michael Burrows." Defendant's position that there was no probable cause to believe the vehicle contained evidence of a crime is belied by these facts.

> **D.     The vehicle was lawfully searched pursuant to a valid search warrant and the firearm is not subject to suppression.**

Defendant further argues that there were "defects" in the vehicle search warrant, because the affidavit associated with this warrant fails to articulate any probable cause that a firearm would be in the vehicle, and the warrant is therefore, overbroad. "An overly broad warrant describe[s] in both specific and inclusive generic terms what is to be seized, but . . . authorizes the seizure of items as to which there is no probable cause." *United States v. Ninety-Two*

13

*Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 ($92,422.57) (3d Cir. 2002). This argument fails for the following reasons.

As emphasized by the government, and this Court agrees, because the Court has found that the police had probable cause to seize the vehicle pursuant to the automobile exception, the question regarding the warrant is moot and the fact that the police did not immediately search the vehicle is not relevant for purposes of this inquiry. "[S]o long as the government maintains continuous control over the vehicle it needs probable cause only for its initial search and seizure and . . . subsequent searches should be viewed as part of an ongoing process." *United States v. Donohue*, 764 F.3d 293, 301 (3d Cir. 2014). Moreover, "if probable cause justifies the search, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. at 300.

In any event, the supporting affidavit for the warrant to search the vehicle, gave the Judge who signed the search warrant a substantial basis to conclude that there was a fair probability that contraband or evidence of criminal activity would be found in the vehicle.

The affidavit included the following facts which gave more than an ample basis for probable cause to search the vehicle: a brief explanation of the affiant's background; a summary of the investigation; a summary of the items seized at the search of 152 Old Plank Road; details regarding controlled substances that were found on the same bed as the car keys, which belonged to Defendant; that Officer Mazzanti was familiar with Defendant and knew him to be a drug trafficker who operates a silver Mercedes SUV; and, last but not least, the SUV was located in a parking lot, and because Defendant did not live in the premises searched, it would be reasonable to believe that he used his vehicle for transportation and in doing so would be transporting drugs and/or cash money related to drug sales.

Contrary to Defendant's position that the affidavit did not specifically mention firearms, and therefore does not articulate a reasonable belief that a firearm would be found in the vehicle, the affiant did state his belief that drug traffickers commonly have large amount of cash on their person, and that it is common for those involved with drug trafficking to hide drugs, cash, or *other contraband* in their vehicles, including hidden compartments. Ex. 10. Therefore, the search warrant is not overbroad simply because the affidavit does not specifically state the word "firearm" or "gun." Additionally, as explained by the officers in their credible testimony before this Court, and in the affidavits, the fact that the sale of narcotics and possession of firearms are often connected explains why a request to search for firearms was included in the search warrant.

### E. The "inevitable discovery doctrine" and the "good faith exception" to the exclusionary rule shields the evidence from suppression.

The firearm in this case still would have been discovered pursuant to the inevitable discovery doctrine, which allows for the admission of evidence that would have been discovered even with an allegedly unconstitutional source. *Nix v. Williams*, 467 U.S. 431 (1984).

While Defendant asks this Court to apply the exclusionary rule to keep the evidence away from the jury, the exclusionary rule is one of "last resort," and "must be weighed against its substantial social costs." *Herring v. United States*, 129 S.Ct. 695, 700 (2009). The evidence at issue here, the $1,607.00, the SUV key, and the firearm, will not be suppressed because the officers involved acted with an objectively reasonable good faith belief that their conduct was lawful throughout the investigation, so the good faith exception to the exclusionary rule is applicable.[3] *Davis v. United States*, 131 S.Ct. 2419, 2423-24 (2011); *United States v. Leon*, 468

---

[3] The four scenarios in which the good faith exception will not apply to warrant-authorized searches are as follows: where the magistrate judge issues the warrant in reliance on a deliberately or recklessly false affidavit; where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function; where the warrant was based on an affidavit so lacking in probable cause as to render official belief in its existence entirely unreasonable; or, where the warrant was so facially

U.S. 897 (1984)(suppression not warranted if search warrant later found to lack probable cause was executed in good faith).

More specifically, with regard to the firearm in this case, the testimony reveals that the officers relied on the good faith advice from the assistant district attorney (and the Court agrees that there was probable cause to search and seize the vehicle). Additionally, there is no evidence whatsoever that any conduct was "deliberate, reckless, or grossly negligent." The affidavits were not false, the issuing judge acted impartially, and neither warrant lacks in indicia of probable cause. Instead, the police officers lawfully sought a search warrant for 152 Old Plank Road, they then consulted with an assistant district attorney prior to the seizure of the vehicle, and took appropriate measures to secure the vehicle prior to obtaining a search warrant. The second search warrant for the vehicle was also properly obtained. The Court sees no culpability on the part of the officers, and therefore, application of the exclusionary rule is not warranted in order to suppress the evidence in this case.

## IV. Conclusion

The Police Officers Bailey, Lenz and Mazzanti, credibly testified as to their involvement in the investigation that resulted in the arrest of Defendant, and they acted lawfully in searching for and seizing the $1,607.00 in cash, the SUV key, and the firearm. The inevitable discovery doctrine and good faith exception to the exclusionary rule further shields this evidence from suppression.

---

deficient that it failed to particularize the place to be searched or the things to be seized. *United States v. Tracey*, 597 F.3d at 151 (citing *United States v. Zimmerman*, 277 F.3d 426, 436-37 (3d Cir. 2002). None of those scenarios are present here. The attenuation doctrine also may apply, although it is not the basis of much argument between the parties.

Accordingly, for these reasons, Defendant's Motion to Suppress (doc. 57) is DENIED. Finally, Defendant's Motion to Strike (doc. 68) is GRANTED, and the Court has not relied upon the matters therein.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All ECF Registered Counsel of Record