IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,        Criminal No. 17-0224
                ELECTRONICALLY FILED

  v.

MICHAEL DILLON BURROWS,

    Defendant.

### Memorandum Order on Motions for Compassionate Release

   Before the Court is Defendant's counseled Motion for Compassionate Release filed pursuant to 18 U.S.C.A. § 3582(c)(1)(A)(1) (doc. 114), Defendant's preceding and related *pro se* Motion for Reduced Sentence (doc. 104), and the Government's Response in opposition thereto (doc. 117).  For the reasons set forth herein, Defendant's counseled Motion will be denied (doc. 3114), and his related *pro se* Motion will be denied as well (doc. 104).

### I. BACKGROUND

   On August 23, 2017, Defendant was indicted on possession of a firearm by a convicted felon (doc. 1), and a superseding indictment was filed on November 30, 2017, adding a charge of possession with intent to distribute a quantity of fentanyl (doc. 28).  Following a hearing on a motion to suppress evidence, after Defendant's motion was denied (doc. 72), on April 24, 2018, Defendant plead guilty to both counts of the superseding indictment (doc. 85), pursuant to a plea agreement that contained a Rule 11(c)(1)(C) stipulation as to the sentence in this case.  Accordingly, upon acceptance of the parties' plea agreement, the Court (and the parties) agreed to a sentence of 58 months imprisonment at each count to be served concurrently, and supervised

release of three years on count one, and six years on count two, to be served concurrently. Defendant was also in violation of his supervised release at Doc. No. 16-cr-00193 and therefore, at the time of his sentencing in this case, the parties also agreed that Defendant serve a sentence of 12 months imprisonment to be served consecutive to the term of imprisonment in this case. The Court accordingly imposed sentence on October 2, 2018 (doc. 101).

Defendant has been in continuous custody since September 8, 2016 and is presently incarcerated at FCI-Elkton (according to Defendant, his anticipated date of release is August 27, 2021). Defendant now moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), stating that he suffers from hypertension and obesity and is part of a class of people who are susceptible to the COVID-19 virus, especially so at FCI-Elkton. Indeed, Defendant's medical conditions involve hypertension, for which he currently takes terazosin and bi-lateral enlargement of the right and left atrium in his heart, as detected by an echocardiogram taken February 7, 2020. Doc. 114 at paragraph 23. In addition to his medical condition, Defendant also contends (in his *pro se* Motion) that familial considerations justify his release, and that suspension of the Residential Drug Treatment program has blocked him from qualifying for community confinement release in 2020. Doc. 104.

The Government's response takes a unique position of agreeing that Defendant has shown "extraordinary and compelling" reasons for release due to his hypertension noting that "in the context of the COVID-19 pandemic, the Government agrees that hypertension is a 'serious physical or medical condition,' that 'substantially diminishes' the defendant's ability 'to provide self-care within the environment of a correctional facility' during the pandemic." Doc. 117 at p. 59. The Government, however, opposes Defendant's motion pursuant to an application of the Section 3553(a) factors.

**II. DISCUSSION**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). The First Step Act's amendment of 18 U.S.C. § 3582 provides an example of such specific authorization. As amended, the First Step Act allows this Court to modify a defendant's term of imprisonment <u>if</u> "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i).

Section 3582 does not, however, define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. See 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of Section 3582(c)(1)(A)(i), but this definition found in the U.S. Sentencing Guidelines Manual ("the Guidelines") § 1B1.13, is outdated. S*ee United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

Although the relevant portions of the Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they provide some benchmarks for this Court's consideration. *See id*. at 397 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a

sentence reduction under § 3852(c)(1)(A).'") (*quoting Beck*, 425 F. Supp. 3d at 582).  For example, the policy statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

In addition to the above, this Court must consider: (1) whether Defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

Since the Government has agreed that Defendant's medical condition of hypertension constitutes an "extraordinary and compelling reason,"  the Court will not analyze the medical records in support thereof, and will find, for purposes of the Order, that Defendant has succeeded in "proving extraordinary and compelling reasons."[1]  The Court also finds, as the parties agree, that Defendant has properly exhausted his administrative remedies in this case.

Despite the immediately hereinabove, upon the required application of the Section 3553(a) factors in the context of Section 3582(c)(1)(A), the Court finds that Defendant has failed to demonstrate that he is not a danger to the safety of the community based upon the serious charges to which he plead guilty in this case, and, additionally, Defendant was still on federal supervision at the time he committed the criminal offenses in this case.  For these reasons, upon application of the Section 3553(a) factors, in order to protect the community and ensure that

---

[1]Although the facts and medical records of each defendant is unique, in other cases, this Court traditionally has found that  hypertension, whether viewed in isolation or as allegedly exacerbated by the ongoing COVID-19 pandemic, fails to rise to an "extraordinary and compelling" level, as that threshold is defined by case law, such that release is inappropriate. Because the parties have agreed thereon, for purpose of this Order, the Court will not weigh Defendant's medical diagnosis and will take this factor as proven.  Crim No. 18-00167 at doc. 184.

Defendant is deterred committed future offense, the Court will deny Defendant's motion(s).   As such, compassionate release is inappropriate.

Similarly, when considering Defendant's hypertension in combination with the ongoing COVID-19 pandemic, the Court likewise finds the combination of concerns fails to warrant relief.   In *United States v. Raia*, the Court of Appeals for the Third Circuit held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." 954 F.3d 594, 597 (3d Cir. 2020).

Without a doubt, Elkton has been one of the hardest-hit federal prison facilities in terms of Covid-19. *See United States v. Montanez*, Case # 15-CR-122FPG, 2020 WL 4218007, at \*3 (W.D.N.Y. July 23, 2020). On April 3, 2020, Attorney General William Barr specifically identified FCI-Elkton as a facility facing "significant levels of infection" and directed the BOP to increase the use of home confinement for prisoners housed at Elkton and other similarly situated federal facilities. *See id.*; In addition, the conditions at FCI Elkton are presently being litigated in a class action lawsuit brought by inmates. *See Wilson v. Williams*, Case No. 4:20-cv-794, 2020 WL 1940882, at \*2 (N.D. Ohio Apr. 22, 2020), *preliminary injunction vacated by* No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).[2] The Court notes that while FCI-Elkton has been particularly hard hit, with 9 inmate deaths, 949 inmates recovered, zero staff deaths and 52 recovered staff members. Currently, Elkton has one positive inmate and two positive staff

---

[2] In the course of the class action lawsuit, the court instructed the BOP to identify the prisoners at Elkton at a high risk of serious illness or death in the midst of the Covid-19 outbreak there. *Wilson v. Williams*, Case No. 20-cv-0794, Docket No. 32 (N.D. Ohio, Apr. 29, 2020).  Defendant is not listed therein.

members. (See www.bop.gov).  Despite these seemingly dire numbers, FCI Elkton has shown

signs that BOP measures designed to protect inmates such as visitation restrictions, mass testing,

and modifications to facility operations are helping to curtail the spread of the virus.  *See*

*Montane*z, 2020 WL 4218007, at *3; *United States v. Gentle*, No. CR 18-0279 (DWF/KMM),

2020 WL 4018216, at **3-4 (D. Minn. July 16, 2020).  Also, although nine inmates have died of

Covid-19 while incarcerated at FCI Elkton, all of those deaths occurred prior to early May. *See*

*Montanez*, 2020 WL 4218007, at *3. In short, although the evidence indicates that Defendant

may face a greater risk of contracting Covid-19 at Elkton than at other locations, the degree of

risk is not as high as Defendant suggests and appears to be diminishing daily even as cases of

Covid-19 rise outside of the prison.

 Accepting that the situation at FCI Elkton coupled with Defendant's medical condition

gives rise to extraordinary and compelling circumstances, as the parties have agreed, these

considerations do not outweigh the application of the Section 3553(a) factors.  *See United States*

*v. Pawlowski*, ___ F.3d ___, 2020 WL 42815035, at *2 (3d Cir. June 26, 2020) ("Before

granting compassionate release, a district court must 'consider[] the factors set forth in [18

U.S.C. §] 3553(a) to the extent they are applicable.'").  As the United States Court of Appeals

for the Third Circuit recently affirmed, whether to reduce an eligible defendant's term of

incarceration for compassionate release after considering the Section 3553(a) factors is

committed to the discretion of the Court. *See id.*

 After consideration of the Section 3553(a) factors in conjunction with the Covid-19

pandemic and the existing conditions at FCI Elkton, this Court finds that release in this case is

unjustified given the nature, circumstances and seriousness of Defendant's offenses, Defendant's

history and characteristics, and the needs for protection of the public, just punishment, and

deterrence.  Defendant's offenses in this case were serious, including both drug trafficking and firearms violations.[11]  Given the serious nature of his offenses, a further reduction in Defendant's sentence would undermine the need for his sentence to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment, and to avoid unwarranted sentencing disparities.

### III. CONCLUSION

Defendant's request for a sentence reduction will be denied because he has failed to demonstrate that he is not a danger to the safety of the community under § 1B1.13 or otherwise merits release under the § 3553(a) factors.  Section 3582(c)(1)(A) requires that this Court must "consider[] the factors set forth in Section 3553(a) to the extent that they are applicable," before it reduces a defendant's prison term.  Here, the Section 3553(a) factors continue to support the sentence this Court originally imposed, and Defendant's motion will be denied.  All three parties – the Court, the Government, and the Defendant – agreed that 58 months of imprisonment was an appropriate sentence upon considering the Section 3553(a) factors.  For the same reasons contemplated at the time the agreement was reached and accepted, the sentence will not be reduced or modified.  Accordingly, Defendant's counseled Motion for Compassionate Release filed pursuant to 18 U.S.C.A. § 3582(c)(1)(A)(1) at doc. 114, and Defendant's previously filed *pro se* Motion requesting the same relief (filed at doc. 104) are **DENIED**.

SO ORDERED, this 6th day of November, 2020.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel

7